(Court of Common Pleas, Franklin County.)

## THE AETNA IRON & STEEL COMPANY
### v. SAMUEL L. TAYLOR, Secretary of State.

1. The act of the legislasure of May 16, 1894 called the Hard Law, is not unconstitutional.

2. The act of the legislature of April 25, 1893, and the payment of the fee required thereby by the plaintiff did not, for reasons given in the opinion, constitute a contract.

3. The first named statute having furnished a remedy for an alleged erroneous assessment of the fee to be paid by the plaintiff, it should have availed itself of that, before resorting to this equitable action.

4. The payment of the ee, which that

statute exacted, by the plaintiff, was voluntary payment.

5. The payment of money under a protest does not render it involuntary, unless the other circumstnces under which it was paid would justify its recovery back.

PUGH, J.

The plaintiff is a foreign corporation, having been incorporated under the laws of the State of West Virginia. The business in which it is engaged being that of manufacturing iron and steel, is carried on at Bridgeport, Ohio.

April 23, 1893, the legislature passed an act which declared that no foreign corporation, other than a banking and insurance corporation, could do business in this State without first having procured from the Secretary of State a certificate that it has complied with the requirements of law to authorize it to do business in this State, and that its business is such that it can be lawfully carried on in this State. Any such corporation, failing to procure this certificate, is disabled from maintaining an action on any contract made in this State.

Before granting the certificate, the Secretary of State had to exact from the corporation a sworn copy of its charter, to be filed, and a statement disclosing the nature and object of its business which it proposes to carry on in this state the amount of its capital stock, its principal place of business, and the name of a person upon whom service of process could be made in this State according to the civil code, such person to have an office or place of business at the place where such corporation is to have its principal place of business.

For this certificate the corporation is required to pay a fee to the Secretary of State, graduated by the amount of its capital stock. The plaintiff's capital stock being over one million, the fee was $50.00.

This statute did not purport to amend or supplement any pre-existing statute. The plaintiff paid the fee of $50.00.

On May 16, 1894, over a year after the passage of the other act, the legislature passed an act to further supplement section 148 of the Revised Statutes. By this act, commonly called the "Hard Law," all foreign corporations, except insurance, banking and other corporations mentioned in the act, in the exception, incorporated for the purposes of profit, and which were then doing business or might thereafter do business in this State, and which owned or used part, or all, of their capital or plant in this State, should, within thirty days after the passage of the act, make a sworn statement, in such form as the Secretary of State might drescribe, showing: 1. The number of shares of the capital stock and the par value of each share. 2. Name and location of the office or offices of the company in Ohio, and name and address of the officers and agents of the company in charge of its business in Ohio. 3. The value of the property owned and used by the company in Ohio, where situate and the value of the property owned and used outside of Ohio. 4. The proportion of its capital stock which is represented by property owned and used and by business transacted in Ohio.

From these facts, and such other facts as should come to his knowledge, bearing upon the question, the Secretary of State had to determine the proportion of the capital stock represented by the company's property and business in Ohio, and then charge and collect from the company for the privilege of exercising its franchise in Ohio one-tenth of one per cent. upon the proportion of its authorized capital stock, so represented by the property owned and used, and by its business transacted in Ohio.

It was declared that this was the same fee that was exacted from domestic corporations, and section 148a of the Revised Statutes does not impose upon domestic corporations a like tax.

Upon payment of this fee the Secretary of State was obliged to issue a certifiate to the foreign corporation certifying that it had complied with the laws of Ohio, and is authorized to do business therein. Against every foreign corporation which fails to comply with this act, penalties are denounced; but every foreign corporation that complies with it is to be exempt from process of attachment on the ground that it was a foreign corporation, or a non-resident of the State.

This statute took no notice of the act of 1893.

The Secretary of State, in obedience to the statute of 1894, charged against and demanded from the plaintiff a fee of $5,000.00, which it paid under protest, and now, in this action, it seeks to recover it back.

It is insisted that the act of 1894 is unconstitutional, because it is retroactive and impairs the obligation of contracts, and because the tax imposed is not uniform upon all property.

Again, it is claimed that if the act is constitutional, only $2,000.00 could have been legally charged against the plaintiff.

The ground work of the first contention is the assumption that the act of 1893, and the payment of the $50.000 by the plaintiff constituted a contract; in consideration of the payment of that sum the plaintiff became entitled to do business within this State. either forever, or for a reasonable period, it is argued.

I am unable to perceive the distinction between these two statutes which the Attorney General contended does exist between them. There is no ingenuity in dialectics which can satisfy one that the main purpose of both of these acts is not the same, namely, that a fee shall be paid by foreign corporations for exercising their franchises in this State.

This purpose is declared in express terms by the act of 1894.

The fee of $50.00 was exacted by the act of 1893 as a fee for the Secretary of State,

filing the certificate therein prescribed. But obtaining the certificate is a precedent condition to the right of the corporation doing business in the State. Therefore it is manifest that the $50.00 had to be paid as a fee for the exercise of the plaintiff's corporate franchise in this State.

This construction compels the court to squarely meet and decide the question whether is was competent for the legislature, at the expiration of one year, or a little over one year, after it granted the p laintiff the right to do business in this State, for which it paid the sum of $50.00, whether it could increase the fee to be paid for a continuation of the permission to $5,000.00 or $2,000.00.

If there was a contract made between the State and the plaintiff at the time it paid the $50.00, the answer must be in the negative.

The plaintiff asserts that "upon the faith of such permit and authority, in the transaction of its said business, it has expended large sums of money in the improvement of its plant and made contracts with citizens of this State, which contracts are now subsisting, and upon which are now, or will become, due to it large sums of money, and which, in the event of non-performance by said citizens, are only enforcible by it in the courts and within the jurisdiction of this State.

This sounds like the plaintiff was relying upon that form of contract which consists of representations made by one party and acts done by another upon the faith of such representations. Yet I do not understand that plaintiff's counsel take that view. Their contention is that there was that form of contract which consists of an intentional offer on the one side and an intentional acceptance on the other side. In effect, the legislature said to the plaintiff: You may do business in this tate if you pay a fee of $50.00. This was a standing offer. Thereupon the plaintiff accepted it by paying the $50.00.

But the elements of a contract did not exist in the transaction between the State and the plaintiff. Being a foreign corporation the plaintiff had no inherent right to come into this State and do business. This State, through its legislature, had the power to prescribe the conditions upon which it could transact such business.

By the act of 1893, the State simply licensed the plaintiff to come and do business in this State. It was not a charter that was granted to it.

A license is neither a charter nor a contract. Being nothing but a license that was granted, it could, at any time, be withdrawn or revoked, subject to the laws and constitutions of the United States and the State.

The statute of 1893 prescribed no time during which the license was to run. Silent on that subject, the license did not imply a permanent and everlasting right to transact business in the State.

"The correlative power to revoke or recall a permission is a necessary consequence of the main power. A mere license by a State is always revocable." Doyle v. Continental Ins. Co., 94 U. S. 540.

The power to revoke might have been circumscribed by an "explicit contract;" but it was not done in this case, because the act of 1893 was silent as to the time the license was to run. That being so, there was abundant power in the legislature to change the conditions of the plaintiff's right to continue the transaction of business in this State, by imposing either a new tax or an additional tax as a license fee.

The enactment of the statute of 1894 was simply an exercise of that unquestionable power.

If the legislature had passed the law the next day or any other unreasonable short time after the plaintiff had paid the $50.00, there would have been no vindication for it, at least in the forum of conscience. But there is no such case here. The law, which increased the fee for exercising the corporate franchise, was not enacted till over a year after the plaintiff was required to pay the $50.00. It was not an unreasonable time.

The act of 1894 is not oppressive, because it simply places foreign corporations on an equality with domestic corporations. Saving the $50.00, the burdens of one are equal to the burdens of the other. The law of comity was not violated. In State v. Moore, 38 Ohio St. 7-11, the opinion was expressed that the law of comity is fully satisfied when foreign companies are permitted to do business in this State upon the terms prescribed for domestic companies.

The theory that there was a contract can rest only upon the assumption that the right granted by the act of 1893 has, like a chartered right, the attribute of immortality. But there is no resemblance between such an act and a general or special legislative act conferring corporate powers.

No corporate attribute was bestowed upon the plaintiff by the act of 1893. It was nothing but a license to do business in this State given to a foreign corporation. The power to either withdraw it, or change its terms, was not restrained, because no "explicit contract" was made. The fact that no time was fixed for the plaintiff to do business is in itself, enough to deprive the transaction of the character of an "explicit contract."

The construction which would make a contract out of the act of 1893 and the payment of the $50.00 by the plaintiff should not be adopted, unless there is the most solemn justification for it; because its result would be to elevate foreign corporations above home corporations.

The power of the legislature to change, amend or repeal laws authorizing the creation of domestic corporations is expressly reserved by the constitution. The milder view of this reservation is that it is intended to reserve the power to alter or repeal

such laws when necessary to protect the interests of the State, or the public. Under this power, the franchise tax on home corporations can be increased at any time by the legislature; but if the contention of the plaintiff is sound, if the act of 1893 can be assimilated to a law conferring corporate powers—a law that cannot be altered or repealed, in the absence of the reservation of that right, then foreign corporations would become a highly privileged class. They would enjoy a privilege that neither our own citizens nor domestic corporations possess, that of saying to the State that when it once fixes the amount of the franchise fee or tax for them to pay, it shall never be increased.

It is assumed, but not decided, that the fee should have been limited to $2,000.00. Still, the plaintiff cannot recover the excess of the $3,000.00 in this action. The statute furnished a remedy for any corporation, which conceived that it was aggrieved by the decision of the Secretary of State, by appeal to the Auditor and Treasurer of State and the Attorney General. The plaintiff should have exhausted that remedy, and even after its exhaustion. it is doubtful whether the court could have redressed any erroneous ascertainment of the amount of the fee.

This identical question arose in the cases of the State to collect the tax from the express companies doing business in this State, the statutory provision in the law being substantially like that in the statute under consideration.

The decision was in favor of the State on the ground just mentioned. On review, the circuit court affirmed the judgment.

There is another reason why the plaintiff cannot recover. Its payment of the tax was voluntary. It was not induced to pay the fee by "compulsion, actual, present, and potential;" that is, by "force of process available for instant seizure of person or property." The hypothesis being that the peremptory demand of the Secretary of State for the payment of the fee of $5,000.00 was unlawful, the plaintiff has not averred the facts necessary to show that it could not save itself and its property in some other way than by paying the tax or fee.

The threat of the Secretary of State to sue for the penalties is not such duress as made the payment involuntary. If he had sued the plaintiff for the penalties, the plaintiff would have been accorded a day in court. when and where, it could have plead, offered proof, and had a decision on the question of its liability. There could have been no immediate seizure of the plaintiff's property by any process, and it had no personality that could be seized.

The petition fails to reveal a single element of an involuntary payment of the fee or tax. The protest is of no avail to make it an involuntary payment. The office of a protest is only to evidence the party's intention, at the time the payment was made; and when, independently of the protest, the circumstances in which a payment is made,

would not justify a recovery thereof, the fact that the payment was made under protest will not render such payment involuntary.

Judgment for the defendant; injunction dissolved and action of the plaintiff dismissed with costs. Notice of appeal. Bond fixed at $150.00.

(And thereupon the operation of the judgment as suspended for eight days.)

———

On error the circuit court affirmed the judgment of the common pleas, with the following opinion:

SHEARER, J.

Judgment affirmed for the reasons stated in the opinion of Pugh, Judge, and the further reason that, in the opinion of this court, the Hard Law requires the charge under it to be based upon the proportion of the authorized capital stock represented by property owned and used in Ohio. All the property of the Company being within Ohio and its authorized capital stock being $5,-000,000. the Secretary of State was right in fixing the fee at $5,000.